LEE LITIGATION GROUP, PLLC
CK Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ALEJANDRO RIVERA HERNANDEZ, *on behalf of himself, FLSA Collective Plaintiffs, and the Class,*<br><br>          Plaintiff,<br><br>   v.<br><br>PRIME STRUCTURE, INC.,<br>PRIME STRUCTURE NY, INC.,<br>NYC BEST SQUAD CONSTRUCTION CORP,<br>MARATHON BUILDERS, INC.,<br>BIG APPLE DESIGNERS NY LLC,<br>GOLD EDGE CONTRACTORS INC.,<br>ISREAL STERN, and<br>SUBCONTRACTORS 1-50.<br><br>          Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff, ALEJANDRO RIVERA HERNANDEZ ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, PRIME STRUCTURE, INC., PRIME STRUCTURE NY, INC., NYC BEST SQUAD CONSTRUCTION CORP, MARATHON BUILDERS, INC., BIG APPLE DESIGNERS NY, LLC, GOLD EDGE CONTRACTORS INC., and SUBCONTRACTORS 1-50 ("Corporate Defendants") and ISREAL STERN, ("Individual Defendant", collectively with Corporate Defendants, "Defendants") and states as follows:

## INTRODUCTION

1.       Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime premiums; (2) unpaid wages, including overtime compensation, due to time-shaving, (3) unpaid wages, including overtime compensation, due to an impermissible policy of rounding, (4) liquidated damages, and (5) attorneys' fees and costs.

2.       Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime premiums; (2) unpaid wages, including overtime compensation, due to time-shaving, (3) unpaid wages, including overtime compensation, due to an impermissible policy of rounding, (4) statutory penalties, (5) liquidated damages, and (6) attorneys' fees and costs.

3.       Plaintiff further alleges that, pursuant to Internal Revenue Code, 26 U.S.C. § 7434, he and others similarly situated are entitled to damages and fees and costs in this matter because Defendants willfully filed fraudulent tax information forms with the Internal Revenue Service ("IRS").

4.       Plaintiff further alleges that Defendants breached their contract with Plaintiff and Class members by failing to pay employer payroll taxes for Plaintiff and Class members, as required by the Federal Insurance Contribution Act ("FICA"). Plaintiff also allege that, in retaining these sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiff and Class Members.

## JURISDICTION AND VENUE

5.       This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law

claims pursuant to 28 U.S.C. § 1367.

6.    Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391, as Defendants perform substantial business in this district.

## PARTIES

7.    Plaintiff ALEJANDRO RIVERA HERNANDEZ is a resident of Kings County of New York. At all relevant times, Plaintiff ALEJANDRO RIVERA HERNANDEZ was employed by Defendants.

8.    Defendant PRIME STRUCTURE INC. ("PRIME") is a domestic corporation organized under the laws of the state of New York with a registered address for service of process at 670 Myrtle Avenue Suite 254, Brooklyn, New York 11205.

9.    Defendant PRIME STRUCTURE NY INC. ("PRIME NY") is a domestic corporation organized under the laws of the state of New York, with a registered address for service of process at 5016 16th Avenue #350, Brooklyn, New York 11204.

10.    Defendant NYC BEST SQUAD CONSTRUCTION CORP ("NYC BEST") is a domestic corporation organized under the laws of the state of New York, with a registered address for service of process at 8846 75th Avenue, Glendale, New York 11385.

11.    Defendant MARATHON BUILDERS GROUP, INC. ("MARATHON") is a foreign corporation organized under the laws of Oklahoma and authorized to do business in New York with a registered address for service of process at 28 Liberty St., New York, New York 10005.

12.    Defendant BIG APPLE DESIGNERS NY LLC ("BIG APPLE NY") is a domestic limited liability company organized under the laws of the state of New York, with a registered address for service of process at 670 Myrtle Ave #438, Brooklyn, New York 11205.

13.    Defendant GOLD EDGE CONTRACTORS INC. ("GOLD EDGE") is a domestic corporation organized under the laws of the state of New York, with a registered address for service of process at 51 Forest Rd #316, Monroe, New York 10950.

14.    Defendant SUBCONTRACTORS 1-50 ("SUB-CONTRACTORS 1-50") are various domestic and foreign businesses authorized to conduct construction related activities in or around the State of New York.

15.    Defendant ISREAL STERN is the President of PRIME. Defendant ISREAL STERN controlled and managed the daily operations of PRIME.

16.    Defendants operated under other names and are associated with other entities, all of which are not now known to Plaintiff.

17.    Defendant PRIME and its related entities manage and keep track of time records, scheduling, and deployment of Plaintiff and others similarly situated to various construction sites in and around New York. **Exhibit A – Timesheet**.

18.    Defendant MARATHON, BIG APPLE NY, GOLD EDGE, and SUBCONTRACTORS 1-50 are sub-contractors and often make contracts with Defendant PRIME and its related entities to secure workers for various job sites in and around New York. **Exhibit B - Subcontractor Agreement**.

19.    To the best of Plaintiff's knowledge, once Defendants MARATHON, BIG APPLE NY, GOLD EDGE, and SUBCONTRACTORS 1-50 contracts with Defendant PRIME and its related entities, Defendants MARATHON, BIG APPLE NY, GOLD EDGE and SUBCONTRACTORS 1-50 would become jointly responsible in compensating Plaintiff. **Exhibit C – Paystubs**.

20.     To the best of Plaintiff's knowledge, both PRIME, including its related entities, and the sub-contractors both possessed power and authority to manage and oversee Plaintiff and other similarly situated employees' work schedule, conditions, and rate of compensation.

21.     To the best of Plaintiff's knowledge, PRIME, including its related entities, kept track of Plaintiff and other similarly situated employees' time when working under other Defendants. However, the timekeeping could be delegated, at times, to sub-contractors. **Exhibit D – Timesheet.**

22.     Defendants are associated and are joint employers, who act in the interest of each other with respect to the employees of the Defendants. Defendants have common policies and practices as to wages and hours, and share control over the Defendants' employees, dictating the time, place, and matter of Plaintiff's and Class Members' employment. Defendants directly employed Plaintiff and Class members.

23.     At all relevant times, Defendants exercised operational control as it relates to all employees including Plaintiff. Defendants exercised the power to fire and hire employees, supervise, and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. Defendants issued and maintained employment records of Plaintiff, FLSA Collective Plaintiffs, and the Class.

24.     At all relevant times, Defendants were and continue to be "enterprises engaged in commerce" within the meaning of the FLSA, NYLL, and regulations thereunder.

25.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

26.    Plaintiff ALEJANDRO RIVERA HERNANDEZ brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees employed as cement worker, journeyman, roofer, mason, bricklayer, laborer, among others, by Defendants on or after the date that is six (6) years before the filing of the Complaint ("FLSA Collective Plaintiffs").

27.    At all relevant times, Plaintiff ALEJANDRO RIVERA HERNANDEZ and FLSA Collective Plaintiffs have been and are similarly situated, have had substantially similar job requirements and pay provisions, and have been and continue to be subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules—all of which have culminated in a willful failure and refusal to pay Plaintiff ALEJANDRO RIVERA HERNANDEZ proper wages for all hours worked, including overtime wages, due to a policy of time-shaving and illegal policy of rounding hours. Plaintiff's claims stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

28.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

29.    Plaintiff brings claims for relief pursuant to the Federal Rule of Civil Procedure ("F.R.C.P.") 23, on behalf of all current and former non-exempt employees employed as cement

worker, journeyman, roofer, mason, bricklayer, laborer, among others, by Defendants on or after the date that is six (6) years before the filing of the Complaint (the "Class" or "Class Members").

30.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

31.     The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

32.     Plaintiff ALEJANDRO RIVERA HERNANDEZ's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subjected to the same corporate practices of Defendants, including (i) failing to pay overtime premiums, (ii) failing to pay wages, including overtime compensation, due to time-shaving, (iii) failing to pay wages, including overtime compensation, due to an improper policy of rounding, and (iv) failing to provide proper wage and hour notices upon hiring and as required thereafter pursuant to the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members

sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures by Defendants.

33.     Plaintiff ALEJANDRO RIVERA HERNANDEZ is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff ALEJANDRO RIVERA HERNANDEZ is represented by attorneys who are experienced and competent in both class action litigation as well as employment litigation and have previously represented plaintiffs in wage and hour cases.

34.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class

members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

35.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

36.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

  a)   Whether Defendants employed Plaintiff and the Class members within the meaning of the New York law;

  b)   What were and are the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and the Class members properly;

  c)   At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and the Class members for their work;

  d)   Whether Defendants properly notified Plaintiff and the Class members of their hourly rate and overtime rate;

e)  Whether Defendants paid Plaintiff and the Class members the overtime premium at one-and-one-half times their regular hourly rates for all hours worked in excess of forty (40) each workweek;

f)  Whether Defendants operated their business with a policy of failing to pay Plaintiff and the Class members for all hours worked due to a policy of time-shaving;

g)  Whether Defendants operated their business with a policy of failing to provide compensation for all hours worked due to an improper policy of rounding Plaintiff's and Class Members' compensable time down to Plaintiff's and Class Members' detriment.

h)  Whether Defendants provide to Plaintiff and the Class members proper wage and hour notices at date of hiring as required under the New York Labor Law.

i)  Whether Defendants provided proper wage statements informing Plaintiff and Class members of their proper overtime rate of compensation and other information required to be provided on wage statements with each payment of wages, as required under the New York Labor Law.

## **STATEMENT OF FACTS**

*Wage and Hour Allegations*

37.  In or around September 2016, Plaintiff ALEJANDRO RIVERA HERNANDEZ was hired by Defendants to work as a laborer for Defendants. Plaintiff's employment with Defendants terminated on or about May 20, 2022.

38.  Throughout his employment with Defendants, Plaintiff ALEJANDRO RIVERA HERNANDEZ was scheduled to work five (5) days per week from 7:00 a.m. to 6:00 p.m., for a

total of eleven (11) hours per day or fifty-five (55) hours per week. Regardless of his schedule, at least once per month, Plaintiff was required to work on Sunday. Similarly, FLSA Collective Plaintiffs and Class members worked shifts of similar lengths and were likewise required to work past their scheduled shift at least twice per week.

39.     From the start of his employment to in or around December 2017, Plaintiff was compensated at a rate of fifteen ($15) dollars per hour. From January 2018 to February 2019, Plaintiff was compensated at a rate of nineteen ($19) dollars per hour. From March 2019 to March 2021, Plaintiff was compensated at a rate of twenty-one ($21) dollars per hour. From April 2021 until his termination, Plaintiff was compensated at a rate of twenty-five ($25) dollars per hour.

40.     Throughout Plaintiff's employment, Defendants failed to properly compensate Plaintiff and similarly situated employees' proper overtime premiums for time worked in excess of forty (40) hours per week as clearly indicated on Plaintiff's pay stub. Both the FLSA and NYLL require that non-exempt employees are entitled to overtime premiums of time and a half of their regular hourly rate for all hours worked exceeding forty (40) hours during any particular week. Similarly, FLSA Collective Plaintiffs and Class members were also not paid overtime premiums. **Exhibit C – Paystub.**

41.     Defendants had a policy of automatically deducting thirty (30) minutes each workday for a meal break. As indicated on timesheets kept by Defendants, Plaintiff and those similarly situated were not paid for their lunch breaks. However, Plaintiff ALEJANDRO RIVERA HERNANDEZ was required to work though his meal break daily, resulting in unpaid wages for at least two and a half (2.5) hours every week. Similarly, FLSA Collective Plaintiffs

and Class members were not permitted to take a free and clear meal break. **Exhibit A – Timesheet.**

42.     Defendants furthermore implemented an impermissible policy of detrimentally rounding down employees' hours.  When Plaintiff, FLSA Collective Plaintiffs, and Class members arrive to work, they were required to write down their scheduled time rather than their actual time worked. Defendants automatically rounded employees' start/end time to the scheduled time they were supposed to work regardless of if they arrived early or stayed late. Plaintiff ALEJANDRO RIVERA HERNANDEZ was regularly required to stay an extra fifteen (15) minutes daily. As a result, Defendants impermissibly rounded Plaintiff's time down to his detriment and never to his benefit. Defendants similarly always rounded down FLSA Collective Plaintiffs' and Class Members' hours to their detriment and never to their benefit. This practice is clearly displayed in Plaintiff's timesheets. **Exhibit A – Timesheet.**

43.     Defendants' policy of paying at a straight time rate and in cash from the beginning of Plaintiff's employment to about November 2021 resulted in Plaintiff not receiving any IRS Form W-2 for those years.

44.     After November 2021 until the end of his employment, despite being directly employed by Defendants, Plaintiff was incorrectly issued a Form-1099 for both years.

45.     Defendants failed to properly record, account for, and report to the IRS all monies paid to Plaintiff and Class Members. In failing to account for those monies in their IRS filings, Defendants filed fraudulent information in violation of 26 U.S.C. § 7434. Under 26 U.S.C. § 7434(b), Defendants are liable for statutory penalties for each Class member for each fraudulent filing, which would have to be at least once a year.

46.     In violating the Internal Revenue Code by failing to provide proper W-2 forms, Defendants also breached their contract with Plaintiff and Class members to pay the employer's share of Social Security and Medicare taxes for each employee.

47.     Defendants also unjustly enriched themselves at the expense of Plaintiff and Class members by retaining monies that should have been remitted to the IRS on Plaintiff's and Class member's behalf.

48.     As a result, Plaintiff and Class members will either (1) be liable to the IRS for the employer's share of FICA taxes or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

49.     The employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiff and each Class member 7.65% of all their earnings from Defendants beginning six (6) years prior to the filing of this Complaint.

50.     Even if Defendant could show that they paid some employees a part of their wages to check and file the appropriate W-2s for those checks. Defendants would remain liable to those employees for failing to pay FICA taxes on the cash portion of their wages.

51.     Defendants never provided Plaintiff with a proper wage notice as required by the NYLL. Similarly, Class Members were never provided with proper wage notices.

52.     Defendants did not provide Plaintiff with proper wage statements at all relevant times. Similarly, Class members did not receive proper wage statements, in violation of the NYLL.

53.     Up until November 2021, Defendants did not provide Plaintiff with pay stubs in violation of NYLL.

54.    In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class members at the beginning of their employment with Defendants.

55.    Defendants further violated the WTPA by failing to provide Plaintiff and Class members with accurate wage statements, because wage statements that do not reflect the actual number of hours worked by the employee do not satisfy the requirements of the WTPA. *See Shi Yong Li v. 6688 Corp*., 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time *actually* worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour *actually* 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp*., 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours *actually* worked") (emphasis added).

56.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated

in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs*., 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

57.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class members. Defendants' conduct actually harmed Plaintiff and Class members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

58.    Had the wage statements Defendants provided to Plaintiff and Class members accurately listed the total number of hours Plaintiff and Class members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked. Either possibility would have allowed Plaintiff and Class members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

59.    The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class members. This delayed payment caused Plaintiff and Class members to struggle to pay bills and other debts.

60.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

61.    The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-2 and paystub dated 12/24/20, is $130,321.30"); T.F. v. N.F., 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

62.    The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration,

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paysubs. The paystub processing service *realcheckstubs* explains:  "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co*., 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

63.     "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y*., LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022)).

64.     Here, it is clear that Defendants' failure to provide Plaintiff and Class members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class members. That, in turn, would have increased Plaintiff's and Class members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

65.     Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

66.    The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

67.    Whether or not any Class members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

68.    The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.

All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Calderon v Witvoet,* 999 F.2d at 1106.

69. Here, the problem is not merely challenging but insurmountable. Plaintiff and Class members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class members. The problem, rather, is that Plaintiff and Class members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

70. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class members, in this litigation and has agreed to pay the firm a reasonable fee for its services.

**STATEMENT OF CLAIM**

**COUNT I**

**VIOLATION OF THE FAIR LABOR STANDARDS ACTON
ON BEHALF OF PLAINTIFF AND FLSA COLLECTIVE PLAINTIFFS**

71.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

72.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

73.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

74.      At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.00.

75.     At all relevant times, Defendants willfully violated Plaintiff's and FLSA Collective Plaintiffs' rights by failing to pay overtime premiums for all hours worked in a workweek exceeding forty (40) hours.

76.     At all relevant times, Defendants willfully violated Plaintiff's and FLSA Collective Plaintiffs' rights by failing to pay them proper wages, including overtime, in the lawful amount for all hours worked due to a policy of time-shaving.

77.     At all relevant times, Defendants willfully violated Plaintiff's and FLSA Collective Plaintiffs' rights by failing to pay them proper wages, including overtime, due to an improper policy of rounding.

78.    Records, if any exist, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs are in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, Plaintiff will then seek leave of Court to amend this Complaint to set forth the precise amount due.

79.    Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

80.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (*i.e.*, double) damages pursuant to the FLSA.

81.    Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime premiums, unpaid wages, including overtime, due to time shaving, unpaid wages, including overtime, due to improper rounding, and an equal amount as liquidated damages.

82.    Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to the FLSA.

## COUNT II

### VIOLATION OF THE NEW YORK LABOR LAW
### ON BEHALF OF PLAINTIFF AND CLASS MEMBERS

83.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

84.    At all relevant times, Plaintiff and the Class members were employed by the Defendants within the meaning of the New York Labor Law §§ 2 and 651.

85.     At all relevant times, Defendants had a policy and practice of not paying overtime premiums to Plaintiff and Class Members for all hours worked in a workweek exceeding forty (40) hours.

86.     At all relevant times, Defendants had a policy and practice of time-shaving that failed to pay Plaintiff and Class members for all hours worked.

87.     At all relevant times, Defendants had a policy and practice of improperly rounding down hours that failed to pay Plaintiff and Class members for all hours worked.

88.     Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

89.     Defendants knowingly and willfully failed to compensate employees within seven (7) calendar days after the end of the week in which wages are earned, in violation of NYLL.

90.     Defendants failed to provide a proper wage and hour notice, on the date of hiring and annually, to all non-exempt employees in direct violation of the New York Labor Law.

91.     Defendants failed to provide proper wage statements with every payment issued to Plaintiff and the Class members, as required by New York Labor Law § 195(3).

92.     Due to Defendants' New York Labor Law violations, Plaintiff and Class members are entitled to recover from Defendants their unpaid wages, including overtime hours, due to time shaving, unpaid wages due to invalid rounding, unpaid wages due to uncompensated short breaks, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of this action.

## COUNT III

**CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS
UNDER 26 U.S.C. § 7434(a)
(brought individually and on behalf of the Class)**

93. Plaintiff realleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

94. Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

95. By failing to provide Plaintiff and Class members with accurate IRS Forms W-2 for all of the tax years during which they were employed by Defendants and failing to properly record, account for, and report to the IRS all monies paid to Plaintiff and the Class as wages, Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434.

96. Defendants knew they had a legal duty not to misrepresent to the IRS the amount of money they were paying employees. Defendants' actions were willful violations of, or showed reckless disregard for, the provisions of the Internal Revenue Code. Pursuant to 26 U.S.C. § 7434(b)(3), Defendants are also liable to Plaintiff for reasonable attorneys' fees.

## COUNT IV

### UNJUST ENRICHMENT

**(brought individually and on behalf of the Class)**

97. Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

98. To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good

conscience to permit the [defendant] to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516, 973 NE2d 743, 950 NYS2d 333 (2012) (internal quotations omitted).

99.    Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contribution. Such came at the expense of Plaintiff and Class members because they will either (1) be liable to the IRS for the employer's share or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

100.    Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff and Class members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c.    An award of unpaid compensation under the FLSA and NYLL. An award of statutory damages to Plaintiff and each Class member under 26 U.S.C. § 7434;

d.    Disgorgement from Defendants of all illegally retained sums that should have gone into FICA contributions;

e.  An award of unpaid compensation due to Defendants' failure to provide overtime premiums for all hours worked in a workweek exceeding forty (40) hours under the FLSA and NYLL;

f.  An award of unpaid compensation due to Defendants' illegal timeshaving policy under the FLSA and NYLL;

g.  An award of unpaid compensation due to Defendants' illegal rounding policy under the FLSA and NYLL;

h.  An award of statutory penalties as a result of Defendants' failure to comply with wage statement and notice requirements under the NYLL;

i.  An award of liquidated damages as a result of Defendants' willful failure to pay all wages pursuant to the FLSA or NYLL;

j.  An award of pre-judgment and post-judgment interest, costs, and expenses of this action, together with reasonable attorneys' and expert fees;

k.  Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

l.  Designation of this action as a class action pursuant to F.R.C.P. 23;

m.  Designation of Plaintiff as a Representative of the Class;

n.  Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: December 26, 2023                    Respectfully submitted,

                                            LEE LITIGATION GROUP, PLLC

                            By:    */s/ C.K. Lee*

                                   C.K. Lee (CL 4086)
                                   Anne Seelig (AS 3976)
                                   148 West 24th Street, 8th Floor
                                   New York, NY 10011
                                   Tel.: 212-465-1188
                                   Fax: 212-465-1181
                                   *Attorneys for Plaintiff, FLSA Collective*
                                   *Plaintiffs, and the Class*